IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD TAYLOR, | ) | Case No. 1:17-cv-1590 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CHARMAINE BRACY, WARDEN, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Currently before me is the petition of Richard L. Taylor, Ohio Inmate #A681-426, for a writ of habeas corpus under 28 U.S.C. § 2254.[1]  Respondent filed an answer/return of writ.[2]  The matter was automatically referred for preparation of a report and recommendation on June 30, 2017.

On December 11, 2015, the trial court found Taylor not guilty of aggravated burglary as charged in Count One and felonious assault as charged in Count Five; but guilty of aggravated burglary as charged in Counts Two and Three, and guilty of attempted felonious assault, a lesser included offense to the charges in Counts Four and Six.[3]  On April 15, 2014, Taylor was

---

[1] ECF Doc. 1.
[2] ECF Doc. 7.
[3] ECF Doc. 7-1 at 39.

sentenced to serve an aggregate prison sentence of four years.[4]  Taylor is currently incarcerated

at the Toledo Correctional Institution.[5]

Taylor's petition raises three grounds for relief.[6]  On October 5, 2017, respondent filed a

return of writ.  Taylor filed a traverse on November 27, 2017.[7]  Because Taylor's grounds for

relief lack merit and are procedurally defaulted, I recommended that his claims be DENIED, and

his petition be DISMISSED with prejudice.

## II.     Procedural History

### A.     State Convictions

On June 21, 2015, Taylor was indicted on three counts of aggravated burglary under Ohio

Rev. Code § 2911.11(A)(2) (Counts One through Three); three counts of felonious assault of

Ohio Rev. Code § 2903.11(A)(1) and (2) (Counts Four through Six); and one count of

intimidation of crime victim or witness of Ohio Rev. Code § 2921.04(B)(1) (Count Seven).  ECF

Doc. 7-1 at 29.  An attorney was appointed to represent Taylor and he pleaded not guilty.  ECF

Doc. 7-1 at 32.

Taylor waived his right to a jury trial and the case was tried to the bench.  ECF Doc. 7-1

at 33.  At the end of the trial, the court granted Taylor's Rule 29 motion for acquittal on Count

Seven but denied his motion to dismiss all other counts.  ECF Doc. 7-1 at 34.  On December 9,

2015, Taylor filed a trial brief on the issue of whether an unenclosed porch on a home met the

definitions of an "occupied structure" in Ohio Rev. Code § 2909.01.  ECF Doc. 7-1 at 36.

---

[4] ECF Doc. 7-1 at 49.
[5] https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A681426 (last visited 6/10/19).
Charmaine Bracy was the original respondent warden named in Taylor's petition.  The warden at Toledo
Correctional Institution is Sean Bowerman. (https://www.drc.ohio.gov/toci - last visited 6/11/19).
[6] ECF Doc. 1.
[7] ECF Doc. 10.

On December 11, 2015, the trial court found Taylor not guilty of aggravated burglary as charged in Count One; guilty of aggravated burglary as charged in Count Two and Count Three; guilty of attempted felonious assault (regarding harm to Erick Elliott) a lesser included offense of the felonious assault charge in Count Four; not guilty of felonious assault as charged in Count Five; and guilty of attempted felonious assault (regarding harm to Erick Elliott), a lesser included offense of the felonious assault charge in Count Six.  ECF Doc. 7-1 at 39.

The state and Taylor each filed a sentencing memorandum.  ECF Doc. 7-1 at 41, ECF Doc. 7-1 at 45.  On February 18, 2016, the court merged the aggravated burglary offenses in Counts Two and Three and the attempted felonious assault offense in Count Four; and the state elected to proceed on Count Two for sentencing.  The court sentenced Taylor to serve a four-year prison term on Count Two and a thirty-six-month prison term on Count Six.  The court ordered the two sentences to be served concurrently for an aggregate sentence of four years.  ECF Doc. 7-1 at 49.

**B.  Direct Appeal**

The trial court appointed new counsel to represent Taylor on appeal.  ECF Doc. 7-1 at 49.  Taylor filed a notice of appeal with the Ohio Court of Appeals on February 25, 2016.  ECF Doc. 7-1 at 53.  Taylor raised the following assignments of error on direct appeal:

The state of Ohio presented insufficient evidence of accomplice liability.

The state of Ohio presented insufficient evidence of burglary, as it failed to prove that appellant or his co-defendant acted knowingly in the alleged entry of Stallworth's home.

The manifest weight of the evidence did not support any conviction for burglary.

Appellant was improperly convicted of the allied offenses of assault and aggravated burglary on the same victim, when in fact the commission of the assault was a continuing course of conduct leading to entry into the victim's home.

ECF Doc. 7-1 at 66.  The Ohio Court of Appeals affirmed the trial court's judgment on December 22, 2016.  ECF Doc. 7-1 at 115, *State v. Taylor*, Eighth Dist. Ohio No. 104284, 2016-Ohio-8311, 2016 Ohio App. LEXIS 5172.  Taylor did not file a timely direct appeal of this appellate decision in the Ohio Supreme Court.

On February 21, 2017, Taylor filed a pro se motion for leave to file a delayed appeal with the Ohio Supreme Court.  ECF Doc. 7-1 at 126.  He argued his appeal was delayed because, due to his pro se status and lack of legal knowledge, he sent his appeal to the wrong place.  He also argued that the delay was due to the Cuyahoga County Clerk of Courts returning his filing via "interdepartmental mail," which was much slower than regular mail.  ECF Doc. 7-1 at 127.  Taylor listed three propositions of law in his motion for leave:

> FIRST PROPOSITION OF LAW:  Are an appellant's rights to due process and equal protection violated when he is convicted with insufficient evidence of accomplice liability?

> SECOND PROPOSITION OF LAW:  When the burden of proving every element of the crime has not been met by sufficient evidence, are an appellant's rights to due process violated?

> THIRD PROPOSITION OF LAW:  Is an appellant denied due process and his right against double jeopardy violated when he is convicted and given separate sentences for allied offenses?

ECF Doc. 7-1 at 129.  On April 19, 2017, the Ohio Supreme Court denied Taylor's motion for a delayed appeal.  ECF Doc. 7-1 at 146.

Taylor moved for reconsideration on May 1, 2017.  ECF Doc. 148.  The Supreme Court of Ohio denied the motion on June 21, 2017.  ECF Doc. 7-1 at 149.

### C.    Motions for Judicial Release

On August 31, 2016, Taylor filed a pro se motion for judicial release.  ECF Doc. 7-1 at 150.  On October 26, 2016, a special court found Taylor was ineligible for REEC, Cuyahoga

County's Re-Entry Court.  This entry noted that, if there was a pending motion for general

judicial release, the sentencing judge would rule on it.  ECF Doc. 7-1 at 158.

On July 24, 2017, Taylor filed a second pro se motion for judicial release.  ECF Doc. 7-1

at 159.  The court denied the motion on August 16, 2017.  ECF Doc. 7-1 at 167.

## III.  Federal Habeas Petition

On July 28, 2017, Taylor filed his *pro se* petition for a writ of habeas corpus, raising three

grounds for relief:

**GROUND ONE:**
Petitioner's right to Due Process under the Fourteenth Amendment to the U.S.
Constitution was violated when he was convicted with insufficient evidence of
aggravated burglary as charged in Count 1.

**SUPPORTING FACTS:**
Count 1 of Petitioner's indictment charged him with committing aggravated
burglary in violation of O.R.C. 2911.11(A)(2) – that he knowingly trespassed into
an occupied structure with purpose to commit in the structure any criminal
offense, and had a deadly weapon or dangerous ordnance on or about his person
or under his control.  It was not conclusively proven that Petitioner ever entered
into the occupied structure – i.e., the home of Bryona Stallworth and Erick Elliot.
Petitioner accompanied his girlfriend, Shenae Cook, to the home of Stallworth
and Elliott at Cook's request.  Cook had asked him to record on his phone the
confrontation that was to ensue between her and Stallworth.  Cook testified that
the fight stayed on the porch (outside of the home) and that Petitioner recorded
the fight from outside.  Stallworth testified that she could only remember seeing
Petitioner standing on the porch, and that she did not see him enter into the house.
Elliott provided multiple, conflicting stories to the police and jury of the alleged
burglary and assault against him by Petitioner.  Officer Joseph Hess of the
Cleveland Police Department testified that Elliott told him he was knocked down
and nearly unconscious immediately, indicating Petitioner never entered the
home.

**GROUND TWO:**
Petitioner's right to Due Process under the Fourteenth Amendment to the U.S.
Constitution was violated when he was convicted with insufficient evidence of
aggravated burglary as charged in Count 2.

**SUPPORTING FACTS:**
Count 2 of Petitioner's indictment charged him with committing aggravated
burglary in violation of O.R.C. 2911.11(A)(1) – that he knowingly trespassed into

an occupied structure with the purpose to commit in that structure the offense of felonious assault against the female victim, Bryona Stallworth – as was charged in Count 5 of his Indictment.  However, in a bench trial he was found not guilty on Count 5.

**GROUND THREE:**
Petitioner was denied Due Process and his right against Double Jeopardy, as provided in the Fifth and Fourteenth Amendments to the U.S. Constitution, when the trial court imposed separate sentences on two separate counts of felonious assault against the same victim for the same conduct.

**SUPPORTING FACTS:**
Petitioner was indicted in Count 4 of felonious assault in violation of O.R.C. 2903.11(A)(1) – that he caused serious physical harm to Erick Elliott.  Petitioner was indicted in Count 6 of felonious assault in violation of O.R.C. 2903.11(A)(2) – that he caused or attempted to cause physical harm by means of a deadly weapon or dangerous ordnance to Erick Elliot.  In a bench trial he was found guilty of both counts.  The trial court then proceeded to sentence him on both counts.  The trial court merged Count 4 with Counts 2 and 3 (aggravated burglary), and the State elected to have Petitioner sentenced on Count 2 to a prison term of 4 years.  Petitioner received a separate sentence of 3 years on Count 6.  Counts 2 and 3 were based on Petitioner having caused physical harm to Stallworth and Elliot, respectively.  It was the causing of physical harm, as charged in both Counts 2 and 3 and 4, that caused them to be merged as allied offenses.  Count 6 was premised on the same conduct of causing physical harm.

ECF Doc. 1 at 4-6.

## IV.    Law and Analysis

### A.    Factual Background

We begin with the factual determinations from the Ohio courts.  Factual findings of state courts are presumed correct unless a petitioner rebuts them with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013).  The Ohio Court of Appeals made the following findings of fact:

> {¶ 1}   Bad blood existed between defendant-appellant Richard Taylor's codefendant, Shenae Cook, and another woman — so bad, in fact, that Cook and Taylor went to the woman's house so that Cook could fight her.  As Taylor used his cell phone to record video of the fight, Cook kneed the woman in the head, starting a brawl that spilled into the woman's house.  Inside the house was a male friend of the woman, who tried to break up

6

the fight.  The male managed to force the two fighting women outside, but Taylor picked up a rock and struck the man in the head, causing serious injury.  These acts caused the court to find Taylor guilty of two counts of aggravated burglary (one for each victim) and two counts of attempted felonious assault (both counts relating to the male).  The assignments of error on appeal question the sufficiency of the evidence with respect to aggravated burglary and accomplice liability, the weight of the evidence to support the burglary count, and whether the attempted felonious assault and aggravated burglary counts should have merged for sentencing.  We find no error and affirm.

{¶ 4}   The state's evidence showed that Cook had a long-standing feud with the female victim.  At about 4 a.m. on the morning the offenses occurred, Cook told Taylor to drive over to the victims' house.  The female victim was sitting on the steps to the porch, so Cook exited the car and told Taylor to use his cell phone to record what would follow.  Cook approached the woman, said that they were "about to fight now," and kneed her in the head.  The woman fought back.  Inside the house at the time of the fight, the male victim was caring for his newborn daughter (the female victim was the child's mother).  He heard a commotion outside and went to the door to see what was happening.  As he approached the door, the fight spilled inside the house.  The man saw Cook with a handful of the female victim's hair, so he tried to separate the two.  The man testified that he pushed the two women out of the house and saw Taylor standing off to the side of the porch, holding a rock.  Taylor struck the man on the head with the rock.  The two men began to wrestle.  The fight ended suddenly when Taylor and Cook left.  The following day, the male victim received medical treatment for a bite on his back (caused by Cook) and stroke symptoms resulting from being struck with the rock.

*State v. Taylor,* 8th Dist. Cuyahoga No. 104284, 2016-Ohio-8311.

## B.     AEDPA Standard

AEDPA governs Taylor's petition for writ of habeas corpus.  *Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor,* 529 U.S. 420, 436 (2000)).  AEDPA "recognizes a foundational principle of our federal

system:  State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall,* 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen,* 558 U.S. 290, 301 (2010)).

The Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under de novo review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the

state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted).  Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.  This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

### C.   Ground One

Taylor's Ground One claim asserts that his due process rights were violated when he was *convicted* of aggravated burglary on Count One of the indictment.  Warden Bracy argues that Taylor's Ground One claim was procedurally defaulted and lacks merit.  I agree that Taylor's Ground One claim lacks merit because the trial court *did not find Taylor guilty* on Count One; it found him *not guilty*.  ECF Doc. 7-1 at 39.  Taylor's traverse concedes that Ground One lacks merit.  ECF Doc. 10 at 7.  Because there is no dispute on this claim, I recommend that it be dismissed.

### D.   Ground Two

#### 1.   Merits Review - Insufficient Evidence

Taylor's Ground Two claim raises a sufficiency of evidence challenge to his aggravated burglary conviction on Count Two.  Warden Bracy characterizes the Ground Two claim as a noncognizable challenge to allegedly inconsistent verdicts on Count Two and Count Five, citing case law holding that inconsistent verdicts do not create a cognizable issue on habeas review.

*See U.S. v. Powell,* 469 U.S. 57, 66 (1984); *Smith v. Herbert,* 275 F. Supp. 2d 361, 371

(E.D.N.Y. 2003); *Cunningham v. Palmer,* No. 2:09-12553, 2010 U.S. Dist. LEXIS 21761, at *15

(E.D. Mich. March 10, 2010).

Taylor argues that he is not challenging the inconsistency of verdicts.  He argues instead

that there was insufficient evidence to support his conviction for aggravated burglary on Count

Two.  He contends that the trial court should not have relied on the testimony of Erick Elliot

because it was unbelievable.  Specifically, he argues that Elliot's testimony that Taylor entered

the premises was unbelievable because Elliot had been hit on the head with a rock or a brick and

was "barely conscious" when he allegedly saw Taylor enter the dwelling.  Taylor also argues that

there was no evidence that he inflicted, attempted or threatened to inflict physical harm on

Bryona Stallworth, the victim in Count Two of the indictment.

The warden's characterization of Ground Two as presenting an argument of inconsistent

verdicts is understandable, given Taylor's reference to having been found not guilty of felonious

assault against Bryona Stallworth on Count Five.  However, Taylor's response that he intended

his Ground Two claim to challenge the sufficiency of the evidence for his Count Two conviction

aligns with the facts he presented in his petition to support his Ground Two claim and the

arguments made in his traverse.  Giving Taylor the benefit of the doubt, I have analyzed the

merits of Taylor's Ground Two sufficiency of the evidence challenge to his Count Two

conviction.

Federal habeas review is available for insufficient evidence arguments.  *Jackson v.*

*Virginia,* 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d

987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*).  States

have the power to determine the elements of criminal offenses, *See Engle v. Isaac,* 456 U.S. 107

(1982); *Jackson*, 443 U.S. at 324, but the Due Process Clause prohibits states from convicting "without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White*, 531 U.S. 225, 228-229 (2001).

A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. (Emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence decision, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Taylor's sufficiency claim, federal habeas review requires deference at two levels. "First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Taylor elected to waive a jury and have his case tried to the court.  The trial court found him guilty of aggravated burglary in Counts Two and Three and guilty of a lesser included offense of attempted felonious assault on Count Four.  ECF Doc. 7-2 at 113.  The court merged these counts and the state elected to proceed on Count Two for sentencing.  ECF Doc. 7-1 at 49.  The last court to consider Taylor's insufficiency argument – the Ohio Court of Appeals – rejected it, holding:

> {¶ 9}   Taylor next argues in his second assignment of error that the state failed to offer legally sufficient evidence to prove that he acted knowingly by entering the female victim's house sufficient to commit a burglary.  Without conceding that he actually entered the house, Taylor submits that if he did, he acted recklessly as part of the fight that was already occurring outside the house on the porch.

> {¶ 10} The "knowingly" element of aggravated burglary as defined by R.C. 2911.11(A) is satisfied with evidence that, "regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

> {¶ 11} The trier of fact could rationally have found that Taylor acted purposely by entering the female victim's house.  The evidence, viewed in a light most favorable to the state, shows that the male victim testified that after he had been struck by the rock, both Taylor and Cook were in the house and that he and Taylor were "locked up tussling." See tr. 50.  This was sufficient evidence to show that Taylor purposely entered the house.

> {¶ 12} Even if there had been no evidence that Taylor entered the house, as an aider and abettor, his right to enter the house was no greater than Cook's right to enter the house.  *State v. Mitchell,* 8th Dist. Cuyahoga No. 94287, 2010-Ohio-5775, ¶ 15 ("a violent crime committed in the residence of one other than the defendant always constitutes aggravated burglary i.e., the commission of the crime terminates the privilege to remain in the home.").  Cook's unprovoked assault on the female victim denied her any claim that she could rightfully enter the house, so the trier of fact could reject Taylor's assertion that he acted recklessly when entering the house.

*State v. Taylor,* 8th Dist. Cuyahoga No. 104284, 2016-Ohio-8311.

Ohio Rev. Code § 2911.11(A)(1) makes it unlawful for a person to trespass, by force, stealth, or deception, in an occupied structure or in a separately secured or separately occupied

portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if the offender inflicts, or attempts or threatens to inflict physical harm on another.  As recognized by the state court of appeals, Erick Elliot testified that Taylor entered his home.  ECF 7-2 at 50.  If believed, this was sufficient evidence to prove the element of entering the premises under Ohio Rev. Code. § 2911.11(A)(1).  And there was sufficient evidence that Taylor's girlfriend-accomplice, Cook, also committed an aggravated burglary by entering the dwelling, biting Elliot and inflicting physical harm on another victim.  ECF 7-2 at 49-50.  Taylor could be found guilty of this offense as an aider and abettor.

Taylor argues that he did not enter the dwelling and that the entire altercation took place outside the dwelling where Stallworth and Elliot lived.  He contends all the witnesses and Elliot himself indicated that the fight and the assault on Elliot occurred outside.  Also, Taylor essentially argues that Elliot's testimony that Taylor entered the house should not have been believed because of the severity of the injury Elliot had suffered.  In other words, Elliot was too impaired by having been struck in the head to have anything he said about what occurred thereafter be believed.  Taylor repeatedly characterizes Elliot's testimony as incredible.  And that's the problem with his argument.  He argues for his view of what is believable and urges the court to reject what he says is not believable.  But that's not how courts are to handle evidence sufficiency challenges.  We must take the evidence at face value and decide whether any rational jury could find it sufficient to find the defendant guilty.  Here, the trier of fact did just that.  And the court of appeals reached the same conclusion.  I do too.

But even if I had disagreed with the trial court's and Ohio Court of Appeals' findings, our court cannot say that the state court was "objectively unreasonable" in concluding that a rational

trier of fact could find Taylor guilty beyond a reasonable doubt.  There was sufficient evidence produced at trial to show beyond a reasonable doubt that Taylor and his accomplice trespassed in a separately occupied portion of an occupied structure – the porch – with purpose to commit in that area, a criminal offense, namely felonious assault against Bryona Stallworth, and the offender recklessly inflicted or attempted to inflict physical harm upon Erick Elliot while there. A rational trier of fact could have concluded that Taylor entered the dwelling itself if it chose to believe Elliot's testimony.  These findings would have been sufficient to convict Taylor of aggravated burglary as alleged in Count Two.  As an aider and abettor, Taylor is guilty for the conduct of his co-defendant, Shenae Cook, if the trier of fact concluded they acted with a common purpose.  Taylor admits the two went to Stallworth's residence to fight.  Thus, the state courts were not unreasonable in arriving at the conclusion that Taylor was guilty beyond a reasonable doubt on the evidence presented.  Taylor's Ground Two claim should be dismissed on the merits.

### 2. Procedural Default/Exhaustion

Warden Bracy also argues that Taylor did not exhaust his Ground Two claim by failing to present the same arguments in state court as he asserts in Ground Two, and by failing to perfect a timely direct appeal to the Ohio Supreme Court.  Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review claims in a habeas petition.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair

15

opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). In almost every circumstance, if a petitioner has not obtained from the highest court in the state a ruling on the federal constitutional issues he raises in his habeas petition, he may not obtain federal court review of those issues. Here, it is quite apparent that the Ohio Supreme Court never ruled on the substance of any of Taylor's issues.

The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy [when] such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981). In other words, Taylor cannot now be required to "exhaust" his right to an Ohio Supreme Court review of his direct appeal issues, because that court has already declined to review them.

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court and pursuing that claim through the state's "ordinary appellate review procedures," if, as is the case here, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and

16

every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims.  *Williams*, 460 F.3d at 806 ("[When] state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Here, Taylor arguably raised Ground Two in his direct appeal to the Ohio Court of Appeals.  He presented several alternative arguments that the evidence was insufficient to support the aggravated burglary conviction.  ECF Doc. 7-1 at 98.  However, even if he raised Ground Two's argument in his initial state court appeal, he failed to file a timely appeal with the Ohio Supreme Court.

Taylor did seek the right to pursue a delayed appeal with the Ohio Supreme Court (ECF Doc. 7-1 at 126), but the Ohio Supreme Court effectively enforced its deadline - or procedural rule - by denying his motion to for leave to pursue a delayed direct  appeal.  ECF Doc. 7-1 at 146.  For this reason, Taylor's Ground Two claim was procedurally defaulted, unless Taylor can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.  *See Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

A petitioner may overcome a procedural default by demonstrating something caused him to run afoul of the state procedural rule and that actual prejudice resulted from the alleged

violation of federal law, or that there would be a "fundamental miscarriage of justice" if the claim is not considered.  *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).  Taylor argues that his appeal to the Ohio Supreme Court was untimely due to an "inadvertent error," i.e., he mailed his appeal to the wrong court.  He also argues that his appeal was further delayed because the Ohio Court of Appeals used interdepartmental mail to return his mis-directed appeal.  However, "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id.*  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule."  *Id.*  Here, Taylor merely argues that he made a mistake.  He does not argue that his appeal was delayed due to "something that cannot be fairly attributed to him."  Thus, he cannot establish "cause" excusing his procedural default.

Nor can Taylor show actual prejudice because, whether or not his claim was procedurally defaulted, it lacks merit (as explained above.)  Thus, he will suffer no actual prejudice because, even if he had timely raised this issue in an appeal to the highest state court, he would not likely have prevailed in the Ohio Supreme Court – or in this court – on his Ground Two claim.  He cannot overcome the procedural default of Ground Two because he cannot show cause and actual prejudice.

Finally, Taylor has not shown that he was actually innocent.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Here, no miscarriage of justice will occur as a result of the dismissal of Ground Two, because Taylor does not argue that he was actually innocent.  He argues that there was

18

insufficient evidence to convict him, but not that he was innocent.  Further, he has not come forward with any new, reliable evidence that was unavailable at the time of his trial which would demonstrate his actual innocence.  Therefore, in addition to lacking merit, Ground Two was procedurally defaulted and may be dismissed on that basis.  I recommend the dismissal of Taylor's Ground Two claim.

**D.      Ground Three**

**1.      Merits Review – Double Jeopardy Clause**

Taylor's Ground Three claim asserts that the trial court erred by imposing separate sentences on two separate counts of felonious assault against the same victim for the same conduct.  ECF Doc. 1 at 6.  Taylor raised this issue in his direct appeal to the Ohio Court of Appeals.  ECF Doc. 7-1 at 66.  The state court of appeals rejected it, stating:

> {¶ 15} The fourth assignment of error complains that the court erred by failing to merge Count 6 into Count 2 for sentencing.  He argues that the attempted felonious assault that he committed under Count 6 was incidental to the aggravated burglary under Count 2.

> {¶ 16} The court found Taylor guilty of Count 2, aggravated burglary; Count 3, aggravated burglary; Count 4, attempted felonious assault; and Count 6, attempted felonious assault. The court merged Counts 2, 3, and 4 for sentencing, but separately sentenced Taylor on Count 6.

> {¶ 17} The court did not err by refusing to merge Counts 2 and 6.  "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable."  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph two of the syllabus.  There were separate victims in this case: Count 2 was an aggravated burglary committed against the female victim; Count 6 was an attempted felonious assault against the male victim.  Having been committed against different victims, they were offenses of dissimilar import that were not subject to merger.  *State v. Hall*, 8th Dist. Cuyahoga No. 102717, 2015-Ohio-5148, ¶ 10; *State v. Adams*, 8th Dist. Cuyahoga No. 102387, 2015-Ohio-3883, ¶ 10.

*State v. Taylor,* 8th Dist. Cuyahoga No. 104284, 2016-Ohio-8311.

Taylor contends that the state courts denied him due process and violated his Fifth and Fourteenth Amendment right against double jeopardy by imposing separate sentences on two distinct counts of felonious assault against the same victim for the same conduct.[8] The Fifth Amendment guarantee against double jeopardy[9] protects against "multiple punishments for the same offense." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). The question of whether punishments are "multiple" is one of legislative intent. *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S. Ct. 2536, 81 L. Ed. 2d. 425 (1984). Thus, when the same act violates two different statutes, multiple charges and punishments do not constitute double jeopardy if "clearly expressed legislative intent" supports the imposition of cumulative punishments. *Hunter,* 459 U.S. at 368. In other words, the Double Jeopardy Clause protects a defendant "from being punished more than once for a single act when the legislature does not intend for the punishments to be cumulative." *Volpe v. Trim,* 708 F.3d 688, 696 (6th Cir. 2013) (citing *Albarnaz v. United States,* 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981).

Here, the state court of appeals correctly considered *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995 (2015), in which the Ohio Supreme Court interpreted Ohio Rev. Code § 2941.25 and other Ohio Supreme Court precedent interpreting the statute. In *Ruff,* the Court recognized that, under Ohio law, "[w]hen a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." The court of appeals determined that there were separate victims in Taylor's case: "Count 2 was an aggravated burglary committed against the female victim; Count 6 was an

---

[8] Taylor argues that he was not guilty of the felonious assault charge against Ms. Stallworth. ECF Doc. 10 at 11. But he was found guilty of Count Two of the indictment, which was an aggravated burglary charge involving the infliction, attempted or threatened physical harm of Ms. Stallworth. The court of appeals correctly found that Count Two and Count Six involved different victims.

[9] The Fifth Amendment's prohibition of double jeopardy was made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969).

attempted felonious assault against the male victim." ECF Doc. 7-1 at 124.  Thus, the trial court did not violate Taylor's rights under the Double Jeopardy Clause by sentencing him on both counts.

The state court of appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.  Rather, by considering *State v. Ruff* and its interpretation of Ohio Rev. Code § 2941.25, the state court properly applied the U.S. Supreme Court's holding that the issue of "multiple punishments" is a matter of legislative intent.  Nor was the state court of appeals' decision based on an unreasonable determination of the facts in light of the evidence presented during the bench trial.  Because Taylor cannot show that the state court's determination of this issue was lacking in justification, I recommend that Ground Three of his petition be dismissed as meritless.

### 2.    Procedural Default

Warden Bracy alternatively argues that Ground Three was procedurally defaulted because Taylor failed to timely appeal this issue to the Ohio Supreme Court.  I agree.  Ground Three was procedurally defaulted for the same reasons as Ground Two.  Taylor failed to timely present the issue to the Ohio Supreme Court.  The Ohio Supreme Court enforced its deadline, or procedural rule, by denying Taylor's motion to file a delayed appeal.  Taylor has not shown cause justifying his failure to timely appeal to the Ohio Supreme Court.  And, as with Ground Two, Taylor cannot show actual prejudice because Ground Three lacks merit.  Finally, Taylor does not argue that he was actually innocent of the charges in Counts Two and Six of the indictment.  Rather, he argues that the state court improperly sentenced him.  Consequently, in addition to lacking merit, Ground Two may be dismissed because it was procedurally defaulted.

## V.      Recommendation Regarding Certificate of Appealability

### A.      Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Where, as here, a petition is procedurally defaulted, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."  *Id*. at 486.

If the Court accepts the foregoing recommendations concerning procedural default and meritless claims, Taylor would not be able to show that the court's rulings on the procedural questions are reasonably debatable.  As noted above, the conclusions that Taylor failed to fairly present his arguments to the highest state court in accordance with the procedural requirements of Ohio law cannot reasonably be debated.  Nor has Taylor established that the state court's determinations of Grounds Two or Three are contrary to clearly established federal law or based on an unreasonable determination of the facts.  His claims are procedurally defaulted and lack merit.  I recommend that the Court not issue a certificate of appealability.

## VI.     Recommendations

Taylor concedes that his Ground One claim lacks merit and should be dismissed. Because Taylor's Ground Two and Ground Three claims lack merit and were procedurally defaulted, I recommend that the court DENY all of Taylor's grounds for relief under 28 U.S.C. § 2254 and DISMISS his petition.  I further recommend that he not be granted a certificate of appealability.

Dated: June 11, 2019

Thomas M. Parker
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).